UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIYEL JUSTIN JOHNSON #807918,

        Plaintiff,

v.

PATRICIA LEWIS, et al.,

        Defendants.
_____/

Case No. 2:23-cv-00240

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust administrative remedies against them. (ECF No. 15 (Lewis's motion) and ECF No. 16 (Kangas's motion).) This R&R also addresses Defendant Kangas's motion to compel the release of Plaintiff's medical records and grievance records. (ECF No. 17.) Plaintiff has not responded to either of these motions.

State prisoner Kiyel Justin Johnson filed a verified complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights by failing to provide him with timely medical care and treatment while he was incarcerated in the Baraga Correctional Facility (AMF). (ECF No. 1.) Johnson alleges that Defendants – Nurse Practitioner (NP) Lewis and Registered Nurse (RN) Kangas – failed to provide him with medical care for his chronic hives, swollen throat, and itchy ears.

(*Id.*, PageID.2.)  Johnson says that he experiences an allergic reaction every time he eats soy or raw carrots.  (*Id.*)

NP Lewis and RN Kangas argue that Plaintiff failed to exhaust administrative remedies with respect to his claims against them.  In his complaint, Johnson alleges that he attempted to exhaust administrative remedies.  Relevant portions of his complaint are shown below.

> V. Exhaustion Of Remedies
>
> 30. As previously stated on paragraph 21, the plaintiff filed his first Step one grievance against Medical Health Care Staff concerning the Defendants Deliberate Indifference towards his needs for Medical Treatment after Multiple/Numerous Episodes in Allergic Break outs in hives which the grievance was never processed by MDOC Staff even after Numerous Kites were sent to the grievance Coordinator requesting for it to be processed and to receive a Step II grievance Form.
>
> 31. A Short While after filing the first grievance and experiencing adverse actions behind it from the Defendants, the plaintiff filed another Step one grievance against Medical Staff this time for retaliation by refusing to process his paperwork so he could receive treatment due to filing said grievance. This Step one grievance for the retaliation was also never processed by MDOC Staff even after sending Numerous Kites to the Grievance Coordinator Concerning the Matter and requesting Step II Forms, But to no avail.
>
> 32. Due to administrative interference with the grievance process, the plaintiff's administrative remedies were not made available to him; therefore he is Considered to have exhausted his remedies.

(*Id.*, PageId.6-7.)

Defendants have presented evidence showing that Plaintiff submitted one grievance through Step III of the grievance process. That grievance was not against NP Lewis or RN Kangas and is not relevant to the issues raised in Plaintiff's complaint. Defendants argue that Johnson has failed to exhaust his administrative grievance remedies against them. Plaintiff has not responded. In addition, Plaintiff has not responded to RN Kangas's request for authorization for the release of his medical and grievance records. Despite Plaintiff's allegations in his complaint, the record shows that the grievance remedies were available to Johnson and that he failed to exhaust his claims against Defendants. It is respectfully recommended that the Court grant Defendants' motions for summary judgment because no genuine issue of material fact exists.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*,

3

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

4

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

5

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If oral

6

resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-

7

established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and

8

should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

Defendants argue that Johnson failed to file a relevant grievance against them that exhausted the Eighth Amendment claims he raised in his complaint. The record before the Court shows that Johnson filed one grievance through Step III of the grievance procedures. (ECF No. 15-1, PageID.53 (Johnson's Step III grievance report); ECF No. 16-2, PageID.87 (same).) That grievance is AMF-22-09-1476-28e. Johnson's Step I grievance in AMF-22-09-1476-28e is shown below.[3]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

[3] Johnson's grievance records indicate that the suffix on this grievance was listed as 01f at Step I. (ECF No. 15-1, PageID.56.) But at Step II, the suffix was changed to 28e. (*Id*., PageID.55.)

> Date Received at Step I __9/20/22__   Grievance Identifier: __AMF 2209 1476 01 8__
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> Name (print first, last): Kiyel Johnson   Number: 807918   Institution: AMF   Lock Number: 6-219   Date of Incident: 07/03/22   Today's Date: 09/17/22
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 06/03/22 - 09/17/22 If none, explain why. I talked to the Arus/PlC in 3 Block and 6 Block Unit to resolve this issue several times prior to writing this Grievance and was told by Arus/prisoner Counselor Wilson and Miller that they will Look into this issue and Never did anything about it.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On June 3rd, 2022 I Spoken to Arus Miller about the Medical Bill thats $3,150.27 On My Monthly Trust statements that I have no Knowledge about and how did that Bill Just pop up on my Trust Account. I dont even owe No $3,150.27 where do that Bill Come from is My Only Question? how Can Health Care just take it upon them selvs to add a Bill or Hospital/Medical Bill on My account without Letting Me Know. Where is this Bill Coming from because i dont owe No Bill that expensive. And im Suing because this is unprofessional and you who added the Bill is acting under color of State Law. How Can you attatch a Medical Bill without a warning. I need My Questions Answered and its Believed that the Accountings office Made a Mistake
>
> INTERVIEWED 9/21/22   Grievant's Signature: Kiyel Justin Joshn
>
> RESPONSE (Grievant Interviewed?) ☒ Yes ☐ No   If No, give explanation. If resolved, explain resolution.)
>
> The grievant contends he has an inappropriate charge from Healthcare on his TRUST account. This respondent interviewed T. Minton from the Business Office. Upon examination of the grievant's TRUST account, it revealed the grievant was ordered restitution from an Assault and Battery misconduct from 9/21/12. The grievant was ordered to pay $3,152.55 in restitution. This respondent finds no violations of PD 04.02.105 Prisoner Funds.

(ECF No. 15-1, PageID.56.)

Plaintiff appealed the denial to Step II. (*Id.*, PageID.55.) The Step II response is not in the record. Plaintiff also filed a Step III appeal. (*Id.*) The Step III response indicates that the Step II appeal was rejected, and that rejection was upheld at Step III. (*Id.*, PageID.54.)

10

The bottom line is that Johnson did not name either NP Lewis or RN Kangas in grievance AMF-22-06-1476-28e. In addition, the grievance was about his medical bill and not about the treatment or lack of treatment that Johnson received.

Johnson has not responded to Defendants' motions for summary judgment. Johnson alleges in his complaint that he was thwarted from exhausting his grievance remedies because he was not given Step II grievance appeal forms to appeal the denial of his Step I grievances against Defendants for their deliberate indifference. (ECF No. 1, PageID.6-7.) Although Johnson says in his complaint that he submitted Step I grievances on the issues asserted, he has failed to present those Step I grievances and responses. Johnson also has failed to present copies of his alleged requests for Step II grievance forms.

In the rare circumstance where a prisoner shows that the administrative procedure was unavailable, "he is not automatically absolved from the PLRA's exhaustion requirement." *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022) (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)). The Sixth Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee*, 789 F.3d at 677 (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

Defendants argue that Johnson did not exhaust his claims against them. But, as noted above, Plaintiff has not responded to Defendants' arguments, and he has failed to present any evidence that shows that he attempted to exhaust his administrative remedies. The Supreme Court held that the grievance process will be considered unavailable to prisoners whenever prison officials thwart the prisoners' attempts to exhaust "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. However, Johnson has not even attempted to show that he complied with the requirements of *Lamb* by establishing that he took affirmative efforts to comply with MDOC administrative procedures.

Defendant Kangas filed a motion to compel Johnson to release his medical and grievance records. (ECF No. 17.) Defendants have certainly provided documents they identify as relevant. But Johnson has not responded to the motion to compel. Plaintiff's grievance records are directly related to Defendants' summary judgment motions. Furthermore, Plaintiff's medical records are also relevant to the subject matter of the complaint. Plaintiff's failure to respond to the request for grievance records is an indication that he has no other grievance records that could support his assertion that his attempts to exhaust his administrative remedies were thwarted. Perhaps more importantly, Plaintiff's non-responses demonstrate that Plaintiff is no longer participating in this litigation. Therefore, alternatively, it is recommended that dismissal of this action for failure to prosecute is appropriate.[4]

---

[4] It is well settled that the Court has inherent authority to dismiss *sua sponte* an action for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962).

In the opinion of the undersigned, Johnson has failed to present evidence which rebuts Defendants' claim that he failed to exhaust his administrative remedies, and the record fails to create a genuine issue of material fact regarding Johnson's claim that he was thwarted or prevented from appealing a grievance through Step III of the grievance process.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motions for summary judgment and dismiss Defendants from this case without prejudice. Alternatively, it is recommended that the Court dismiss this action for failure to prosecute. If the Court accepts this recommendation, this case will be dismissed.[5]

Dated:   December 13, 2024                /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[5]   Defendant Kangas's motion to compel will be moot.